Vincent Benatti, Appellee, v. John Hancock Mutual Life Insurance Company, Appellant.

Gen. No. 39,012.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

Opinion filed May 19, 1937.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

JOHN A. NORDSTRAND and WILLIAM C. RILEY, both of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.
The defendant, John Hancock Mutual Life Insurance Company, appeals from a judgment entered in the municipal court of Chicago in the sum of $600 in favor of the plaintiff. The judgment was entered in an action by the plaintiff based upon a life insurance policy issued by the defendant on the life of Dolores Benatti, wherein the plaintiff was named beneficiary to receive the

amount of the insurance upon the death of the insured, which occurred on March 24, 1935.

No question is raised by this appeal upon the pleadings filed in the case by the parties.

From the facts in the record it appears that on the 29th of June, 1932, the defendant company issued its policy of insurance on the life of Dolores Benatti. The policy provides that the company will pay the amount set forth in the schedule to the plaintiff as beneficiary upon receipt of satisfactory proof of death. The policy also provides for the payment of a weekly premium in the sum of 25 cents, payable on or before each Wednesday during the continuance of the policy.

By the terms of the policy all premiums are payable at the home office of the company in Boston, but may be paid to any of its authorized agents, subject to the conditions of the policy. Should such agent fail to call for any premium when due, the insured is to make immediate payments of the premiums either to the district office or to the home office, and failure of the agent to collect premiums will make it necessary for the insured to pay the premiums when due at the office of the company, as provided for in the policy.

The policy also provides that no payment of premiums shall be valid unless entered in the premium receipt book at the time of payment, by the agent, or other representative of the company authorized to receive it.

The weekly premiums required were due on the 20th day of each month during the life of the policy, and upon failure to pay within the period of grace, which is four weeks, the liability of the company under the policy ceases, and if the insured wishes to reinstate the policy, it is provided that any time within one year from default in payment of premiums, if the cash surrender value has not been paid or the extension term has not expired, the policy may be reinstated upon production of evidence of insurability satisfactory to the company

and approved at its home office and the payment of past due premiums.

The weekly premium due Wednesday, February 20, 1935, was not paid. The plaintiff on or about 3 p. m. Friday, March 22, 1935, forwarded a $2 money order to the district office of the defendant company to pay the past due premiums on the policy in question, and the past due premiums on two other policies, which were on the life of Eleanor Benatti, a sister of Dolores Benatti.

Dolores died on March 24, 1935. On March 25, 1935, Robert Theriault, the agent of the defendant, and James A. Simmons, assistant district manager of the defendant, went to the home of Mr. and Mrs. Benatti and at that time Mr. Simmons gave them company death claims to be filled out and signed. Mr. Simmons told them that the insurance was "out of benefit" but that the plaintiff could submit his claim to the company. No premium was paid to or accepted by agent Theriault or the assistant manager Simmons on March 25, 1935. Thereafter, on March 29, 1935, Thomas J. McCarthy, district manager of the defendant company, wrote the following letter to the plaintiff:

"We have been in receipt of your remittance in the amount of $2.00 for payment of premiums due on policy No. 23428732 on the life of Dolores Benatti and Nos. 23489983–23860345 on the life of Eleanor Benatti.

"This is to advise you that this insurance was out of benefit at the time your remittance was forwarded. Before we can proceed with the reinstatement of policies on the life of Eleanor Benatti, it will be necessary that the enclosed certificates of insurability be signed by you and returned to us at which time we will present them to our Home Office for approval of reinstatement.

"We have not enclosed reinstatement application on policy No. 23428732 on the life of Dolores Benatti as we understand that she is deceased and, therefore, the reinstatement of her policy would not be approved.

"Your money order, as well as your book, is returned herewith, and if you care to reinstate the two policies on the life of Eleanor, return the completed reinstatement forms to us after the signatures have been witnessed, also forwarding your book and money order and we shall present them to the Home Office for approval.

"(Signed) Thomas J. McCarthy."

On March 30, 1935, Robert Theriault and James A. Simmons again went to Mr. and Mrs. Benatti's home. On this date reinstatement applications were signed by Mrs. Benatti to reinstate the two policies on the life of Eleanor Benatti. At the same time, Agent Theriault accepted a $2 money order as payment of back premiums on the two policies which were to be reinstated pending approval of the application for reinstatement by the home office of the defendant. He marked up payments on the premium receipt book for two policies on the life of Eleanor Benatti, showing payment of premiums to April 10, 1935. From the receipt book in which the payments were noted, it appears that payment of premiums were made to the defendant's collection agent frequently after the due date of payment, but within the period of grace provided for in the policy, with the exception of one payment made on August 29, 1934, which, it is contended by the plaintiff, was 29 days after a previous payment made on August 1, 1934. Evidence was offered by the plaintiff that on the occasion of the payment of August 29, 1934, it was called to the attention of the defendant's collecting agent that payment was being made after the period of grace had expired and the collection agent assured the plaintiff's wife that the matter of a day or two tardiness in payment of premium would not make any difference.

It also appears from the evidence that in the course of a conversation with the plaintiff's wife, the agent assured her that the company would not take advantage

of any tardiness in payment of premiums, and during this conversation the defendant's collection agent was informed that the plaintiff was moving to a new address and to notify the office of the company of this address and to make arrangements for future collection of premiums at the new address.

On Monday, March 25, 1935, the office of the defendant company was notified of the death of Dolores Benatti and Mr. McCarthy, the branch manager of the defendant company notified his informant, Anthony Allen, that the money order for $2 had been received and that the receipt book would be returned containing the proper receipt for payment, and that other representatives of the company would call at the home of the plaintiff with settlement papers that afternoon.

Agents of the defendant company called at the home of the plaintiff and turned over proofs of death, which were prepared and executed by the plaintiff and delivered to the defendant. Subsequent to that time, on March 30, 1935, the money order for payment of the premium which had been previously sent to the company on the 22nd day of March, 1935, was returned to the plaintiff, with a letter advising him that the policy was "out of benefit," which letter we have referred to and set out in this opinion.

The evidence of the witnesses, as well as the exhibits, was before the court, and the jury after considering all the evidence returned a verdict for the amount of $600, the subject of this appeal.

The defendant contends that the plaintiff is not entitled to recover under a life insurance policy which is not in force on the date of the death of the insured and where the premiums have not been paid and where there was no proof of waiver of premium payments, and points to the fact that the premium due February 20, 1935, was not paid within the four-week grace period provided by the terms of the policy, and that because

of default in payment, the policy was not in force on March 24, 1935, the date of death of the insured.

The plaintiff answers this contention of the defendant by suggesting that forfeiture for nonpayment of premium is waived where the insurer's collecting agent by course of conduct induced the policyholder to believe that it was not necessary to pay the instalments of premium within the period provided for their payment and that payment could be made after expiration of the period without incurring a forfeiture, and cites as authority the case of *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill. 369, wherein the court announced a rule which is a guide in cases of this nature. The court said:

"Waiver by an insurer results when it by an act, statement or course of conduct toward the assured recognizes the policy as existing though the time for payment of the premium has expired. Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium such forfeiture will not be enforced. If the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture."

The plaintiff points to the evidence in the instant case to bring his claim of waiver within the rule of the Supreme Court. From the evidence it is apparent that payments were received by the defendant after the due date but within the grace period, with the exception of when the payment was made on August 29, 1934, which the plaintiff contends was 29 days after the due date. When this payment was made plaintiff's wife called the collecting agent's attention to the fact that the payment was late, and the agent assured the wife of the plaintiff that the matter of a day or two tardiness in payment would not make any difference. Of course, the rule is that an agent of an insurance company is not empowered to change the provisions of the contract. This

must be conceded, but a company operating through agents can be bound by the acts of its agents in waiving provisions providing for payment of premium. In support of this rule no citation of authorities of courts of last resort is necessary.

The defendant stresses the fact that the letter of the company advised the plaintiff that the policy was out of benefit for failure to pay the premium. This letter was received by the plaintiff on March 30, 1935. In the meantime between the day of payment and the receipt of the letter, the agents of the company called and had proofs of death executed by the plaintiff. This circumstance is worthy of note in that the company at that time acted upon the theory that the policy was still in force and supports the evidence of the witness Allen who testified that McCarthy, the agent of the defendant company, stated to him that the $2 money premium had been received and the receipt book would be returned containing the proper receipt for payment, and that representatives would call at the home of the plaintiff with the settlement papers. Then, again, when the letter was received on March 30, 1935, the agents of the company called at the home of the plaintiff, and during a conversation between the parties present, plaintiff's wife Helen Benatti, inquired about the check for the death claim.

While part of the evidence upon some of the questions of fact is in dispute, there is sufficient to support the verdict of the jury and the judgment entered by the court.

An important feature of this case is that the four-week period of grace after failure to pay premiums is in violation of the statute of this State. Ch. 73, ¶ 375, § 1, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 66.371, provides:

"That from and after January 1, 1908, no policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized

under the laws of this State, unless the same shall provide the following:

"Days of Grace. (2) For a grace of one month for the payment of every premium after the first year which may be subject to an interest charge, during which month the insurance shall continue in force: Provided, that if the insured shall die within the month of grace the unpaid premium for the current policy year may be deducted in any settlement under the policy."

The defendant admits that the insurance policy is controlled by the statute above quoted, but contends that according to plaintiff's testimony he mailed a money order for $2 to the defendant company on the afternoon of March 22, 1935, which was 30 days after the due date of the premium. In the ordinary course of mail, the letter containing the money order would be received by the defendant company the next day, which would be 31 days after February 20. The answer to this contention is that the statute provides for a month of grace, not of days, so that when the payment became due on February 20, this month had but eight days remaining, and March being a month of 31 days, the plaintiff was entitled to compute his payment on the basis that there were 31 days in this month. In other words, plaintiff had a right to take into consideration there were 31 days in this month and that the courts do not consider fractions of time under the laws of this State; that he would be entitled to 23 days in March in making payment of the premium, and defendant having admitted receipt thereof, it was made on time and there was no default.

The defendant complains of the giving of the following instruction by the court:

"You are instructed that although a policy in this case provided that premiums were payable weekly in advance and allowed the policyholder a period of grace of four weeks within which to pay premiums after the date each premium was due, and further provided that

upon the failure of the insured to pay the premium within the period of grace, the company's liability shall cease, that such provisions were optional on the part of the defendant company and could be waived by it if it chose to do so.''

Attention is called to the statute of the State of Illinois, ch. 73, par. 375, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 66.371, by which it is provided that insurance companies doing business in this State shall include in the provisions of the policy the 30-day period of grace. This instruction was not of itself harmful. While the provision of the statute in question must be complied with, still a further period of time may be granted by the company in terms such as will not violate the statute, but, on the other hand, the forfeiture of a policy may be optional, that is to say, a breach may be waived by the insurance company. In support of this contention the defendant cites the case of *Ely v. Prudential Ins. Co.*, 247 Ill. App. 345. After an examination of the opinion it does not appear to us that it militates against the theory of the instruction, for the court in its opinion said: ''It is undeniable that a party may waive the advantage of a statute intended for his sole benefit, but there are grave reasons why a law enacted from public considerations should not be abrogated by mere private agreement. (*Phelps v. Phelps,* 72 Ill. 545.) It is said in *Thompson v. Knickerbocker Life Ins. Co.,* 104 U. S. 252, 'A valid excuse for not paying promptly on the particular day, is a different thing from an excuse for not paying at all.' ''

The defendant also charged the court with error in the refusal to give two other instructions. We have considered them in the light of defendant's complaint, and are unable to agree that their refusal was erroneous.

For the reasons stated, the judgment of the court is affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., and Hall, J., concur.